# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00856-SCT

*ROGER DALE LATHAM*

*v.*

*MICHELE ANN LATHAM*

DATE OF JUDGMENT:                06/14/2017
TRIAL JUDGE:                     HON. JOHN S. GRANT III
TRIAL COURT ATTORNEYS:           MARC EDWARD BRAND
                                 DAVID BRIDGES
COURT FROM WHICH APPEALED:       RANKIN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:          DAVID BRIDGES
ATTORNEY FOR APPELLEE:           MARC EDWARD BRAND
NATURE OF THE CASE:              CIVIL - OTHER
DISPOSITION:                     AFFIRMED - 01/17/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE RANDOLPH, P.J., COLEMAN AND CHAMBERLIN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Michele Ann Latham and Roger Dale Latham divorced on February 5, 2016.  On March 24, 2017, Michele filed a petition for contempt against Roger, claiming that he had failed to comply with the divorce judgment.  After a hearing, Chancellor John S. Grant III found Roger in constructive criminal contempt for failing to comply with several terms of the divorce judgment.  Roger appeals, arguing that the chancellor erred because he did not recuse himself before finding Roger in constructive criminal contempt.

¶2.     Because Roger raises the argument for the first time on appeal, it has been waived. Accordingly, the Court affirms the chancellor's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3. On February 5, 2016, the chancellor granted Roger and Michele a divorce based on irreconcilable differences. On March 24, 2017, Michele filed a petition for contempt[1] against Roger, asserting that he had failed to comply with several obligations of the marital dissolution agreement, which had been incorporated in the final divorce judgment. Michele requested that the chancellor find Roger in civil and criminal contempt. Roger was served with a Mississippi Rule of Civil Procedure 81 summons, and a hearing was set for June 12, 2017, on the petition for contempt. Roger did not file response to the petition for contempt; rather, he filed a motion for a continuance because he had a cruise vacation scheduled. The chancellor denied the motion for a continuance. Roger did not appear for the hearing.

¶4. At the hearing, Michele called three witnesses to testify in support of her petition for contempt. Michele also testified. Michele requested that the chancellor incarcerate Roger for his violations of the divorce judgment. Roger's attorney called one witness in his defense. After both parties rested, the chancellor found Roger in civil contempt and criminal contempt because he had failed to comply with certain obligations of the marital dissolution agreement. On June 14, 2018, the chancellor entered a judgment of contempt and ordered Roger to comply with certain terms of the marital dissolution agreement. The chancellor also ordered Roger incarcerated for seventy-two hours, regardless of whether he complied with the obligations set out in the order.

---

[1] Michele had filed two previous petitions for contempt against Roger following the final judgment.

¶5.     Roger appeals, but does not challenge the chancellor's finding of civil contempt. Furthermore, Roger does not dispute that he was guilty beyond a reasonable doubt of constructive criminal contempt; rather, Roger raises the following sole argument on appeal: "The Chancellor erred when he did not recuse himself before finding that Roger was in constructive, criminal contempt."

## STANDARD OF REVIEW

¶6.     Roger appeals solely from the chancellor's finding of criminal contempt. Typically, the Court reviews criminal contempt matters *ab initio* and determines from the record whether the alleged contemnor is guilty of contempt beyond a reasonable doubt. *Dennis v. Dennis*, 824 So. 2d 604, 608 (¶ 7) (Miss. 2002). However, as previously noted, Roger does not challenge the contempt finding; rather, Roger raises the sole issue of whether the Chancellor erred by not recusing before finding Roger in constructive criminal contempt.

¶7.     "The decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards and is consistent in the application." *Tubwell v. Grant*, 760 So. 2d 687, 689 (¶ 7) (Miss. 2000) (quoting *Collins v. Joshi*, 611 So. 2d 898, 902 (Miss. 1992)). The Court applies a *de novo* standard when reviewing procedural issues raising questions of law. *Corr v. State*, 97 So. 3d 1211, 1213 (¶ 5) (Miss. 2012) (applying a *de novo* standard of review to a contempt matter when the issue was whether the chancery court did not recuse). Because the assignment of error is a question of law, the Court will apply a *de novo* standard of review.

## DISCUSSION

3

¶8.     Two forms of criminal contempt exist: direct and constructive. *Dennis*, 824 So. 2d at 608 (¶ 10). "Direct contempt occurs in the presence of the court and may be dealt with immediately." *Id.* In contrast, constructive, or indirect, contempt occurs outside the presence of the court. *Id.* Here, the parties agree that the chancellor found Roger in constructive criminal contempt because his contemptuous conduct had occurred outside the presence of the chancellor. Roger does not dispute that he was guilty of criminal contempt beyond a reasonable doubt; rather, Roger contends that before the chancellor had found him in constructive criminal contempt, he had been entitled to certain procedural safeguards, including the chancellor's recusal.

## A.     Recusal of the Chancellor

¶9.     At the trial level, Roger did not object to the chancellor's presiding over the contempt hearing by way of a motion or otherwise. "We are not required to address issues that are not objected to at trial and preserved for appeal." *Dennis*, 824 So. 2d at 611 (¶ 18). "The failure to seek recusal generally is considered implied consent to have the judge go forward in presiding over the case." *Rice v. State*, 134 So. 3d 292, 299 (¶ 16) (Miss. 2014).

¶10.    In *Tubwell*, defendant Robert Tubwell argued that the circuit court had erred by failing to recuse from the case *sua sponte* in light of its alleged prejudice against Tubwell. *Tubwell*, 760 So. 2d at 688-89 (¶ 5). The Court held that Tubwell's argument was barred because Tubwell had raised the assignment of error for the first time on appeal and had failed to object or to file a motion asking for the circuit court to recuse. *Id.* at 689 (¶ 8). The Court explained that, "[w]here the party knew of the grounds for the motion or with the exercise

4

of reasonable diligence may have discovered those grounds, and where that party does not move timely prior to trial, the point will be deemed waived." *Id.*

¶11.     In *In re Hampton*, 919 So. 2d 949, 952 (¶ 1) (Miss. 2006), an attorney failed to appear for a hearing and was found in criminal contempt by the circuit judge. On appeal, the attorney argued that the circuit judge should not have presided because he was impartial, biased, and had engaged in *ex parte* communications. *Id.* at 956-57 (¶ 27). The Court held that the failure to object or to move for recusal of the circuit judge who had heard the contempt charge resulted in waiver of the argument. *Id.* at 957 (¶ 27).

¶12.     The ground that Roger asserts on appeal had warranted recusal was known prior to his contempt hearing. As such, Roger consented to the chancellor's ruling on Michele's petition for contempt. *See Rice*, 134 So. 3d at 299 (¶ 16). Because Roger failed to object or to seek recusal of the chancellor at the trial level, we hold that his recusal argument has been waived. *See In re Hampton*, 919 So. 2d at 956-57 (¶ 27); *Tubwell*, 760 So. 2d at 689 (¶¶ 8-9).

¶13.     The dissent suggests that Roger had no notice that he may be subject to the chancellor's finding of constructive criminal contempt. Notwithstanding the record support that Roger did have notice, we find noteworthy that Roger did not argue lack of notice at the contempt hearing, nor did Roger file a motion to set aside the finding of criminal contempt based on any new revelation that he had been subjected to criminal contempt by surprise. Furthermore, on appeal, Roger does not argue that he lacked notice that he might be found in constructive criminal contempt.

¶14. "One of the most fundamental and long established rules of law in Mississippi is that the Mississippi Supreme Court will not review matters on appeal that were not raised at the trial court level." *Miss. Transp. Comm'n v. Adams ex rel. Adams*, 197 So. 3d 406, 416 (¶ 30) (Miss. 2016); *see also Whittington v. H.T. Cottam Co.*, 130 So. 745, 749 (Miss. 1930) ("If th[e] [C]ourt will decide correctly the questions presented and briefed in cases, it will be doing well, without going out on a hunt for other questions.").

¶15. "Most importantly, [Roger] allowed the chancellor to adjudicate his rights." *Dennis v. Dennis*, 824 So. 2d 604, 611 (¶ 18) (Miss. 2002) (holding that the contemnor waived claims of defective service and violation of due process when he objected for the first time on appeal). In *Dennis*, the Court enforced the well-established principle that

> We are not required to address issues that are not objected to at trial and preserved for appeal. *Caston v. State*, 823 So. 2d 473, 503 (Miss. 2002) (citing *Gatlin v. State*, 724 So. 2d 359, 369 (Miss. 1998) ("If no contemporaneous objection is made, the error, if any, is waived."); *Carr v. State*, 655 So. 2d 824, 832 (Miss. 1995) (appellate court is under no obligation to review an assignment of error when an objection was not made or when an objection was untimely)). *See also EEOC v. Local 28 of the Sheet Metal Workers Int'l Ass'n*, 247 F.3d 333 (2d Cir. 2001) (contemnor waived claim that its due process rights were violated where it did not raise a due process argument until after court had rendered its decision); *Peterson v. Highland Music, Inc.*, 140 F.3d 1313 (9th Cir. 1998) (contemnor waived claim of due process violations where he failed to raise a due process objection before the court).

*Dennis*, 824 So. 2d at 611 (¶ 18).

¶16. Even assuming Roger had raised lack of notice as an assignment of error on appeal, as the dissent now advocates, lack of notice remains subject to waiver. The Court has written that, "[w]here a party does not waive proper notice of a contempt action, we have reversed

6

the contempt finding and remanded the matter to the chancery court." *Hanshaw v. Hanshaw*, 55 So. 3d 143, 146 (¶ 9) (Miss. 2011). In *In re Spencer*, 985 So. 2d 330, 340 (¶ 34) (Miss. 2008), the Court held that a contemnor waived her right to notice and specification of the charge against her because she did not raise an objection to her lack of notice or specification of the charges at the hearing on contempt and sanctions. The position advocated by the dissent suffers the same deficiency.

¶17. The reason why Roger has not raised lack of notice at any level is apparent from the record. Put simply, the record refutes the dissent's suggestion that Roger was not aware of the constructive criminal contempt charges pending against him. Michele's petition for contempt stated that the chancellor had previously entered an order on January 20, 2017, requiring compliance with the divorce judgment and warning that "failure to strictly comply with the terms of th[e] [o]rder shall be enforceable by the contempt powers of this [chancery c]ourt." "[T]he ability to punish for criminal contempt is derived from the inherent powers of the court." *Purvis v. Purvis*, 657 So. 2d 794, 798 (Miss. 1994).

¶18. Michele's petition also included a request that "Roger suffer such *punishment* as th[e] [chancellor] deems reasonable and proper under the circumstances." (Emphasis added.) The dissent excludes Michele's specific request in its recitation of the petition's requests for relief. "Criminal contempt penalties . . . are designed to punish the defendant for disobedience of a court order; punishment is for past offenses and does not terminate upon compliance with court order." *Dennis*, 824 So. 2d at 608 (¶ 10). In *Moulds v. Bradley*, 791 So. 2d 220, 225 (¶ 9) (Miss. 2001), the Court held that the record clearly supported the

7

alleged contemnor's assertion that he was not provided any notice that he would be tried for criminal contempt because the petitioner's attorney had expressly requested that the alleged contemnor not be incarcerated. Unlike *Moulds*, in the case *sub judice*, Michele testified at the contempt hearing and specifically requested that the chancellor order that Roger be jailed as a consequence of his contempt.

¶19. Undoubtedly, Roger had notice that he had violated a term of the divorce judgment, which could only have been remedied by the chancellor's imposing a sanction of punishment so as to constitute constructive criminal contempt. For example, Michele's petition for contempt alleged, *inter alia*, that Roger was in contempt of the divorce judgment by staying overnight with a member of the opposite sex not related by blood or marriage to him in the presence of their minor children. After hearing the evidence, the chancellor found Roger guilty of the alleged conduct. Obviously, Roger could not have purged himself of the impermissible overnight stays, which the chancellor found had already occurred.

¶20. Roger's assignment of error is limited to whether our caselaw mandates that judges recuse *sua sponte* in every case involving constructive criminal contempt. For the foregoing reasons, the assignment of error has been waived. Had Roger properly preserved the issue, Justice Maxwell's well reasoned specially concurring opinion explains why *sua sponte* recusal is not mandatory in all constructive criminal contempt cases.[2]

---

[2] In constructive criminal contempt cases "[w]here the judge whose court or order is offended has substantial personal involvement in the bringing and prosecution of the criminal contempt proceedings, he may not adjudge the defendant's guilt." ***Cook v. State,*** 483 So. 2d 371, 376 (Miss. 1986). The ***Cook*** Court qualified its holding: "We do not wish here to be understood as saying that any personal involvement in initiating criminal contempt proceedings disqualifies a judge." ***Id.*** n.6. Under ***Cook***, and as further explained in Justice

## B.      Michele's Request for Attorneys' Fees

¶21.    The chancellor ordered Roger to pay $2,500 in attorneys' fees as part of the contempt judgment.  Buried at the conclusion of Michele's brief is a one sentence request that the Court award her one-half of the attorneys' fees that had been awarded by the chancellor. Specifically, without any citation of authority and without any citation of the record, she writes, "Further, Appellee requests to be awarded one-half of the attorney's fees awarded by the trial court, or twelve hundred and fifty dollars ($1,250)."

¶22.    When a prevailing party requests attorneys' fees on appeal, "[t]ypically, th[e] Court awards attorney fees on appeal in an amount equal to half the amount awarded at trial." *Huseth v. Huseth*, 135 So. 3d 846, 861 (¶ 47) (Miss. 2014).  Because such an award may not be fair and equitable in all cases, the Court has written that the "better practice" would be for a party seeking attorneys' fees on appeal "to file a motion in th[e] Court, supported by affidavits and time records that establish the actual fees expended on appeal." *Hatfield v. Deer Haven Homeowners Ass'n, Inc.*, 234 So. 3d 1269, 1277 (¶ 30) (Miss. 2017).

¶23.    While the Court has declared that the better practice would be for a party seeking attorneys' fees on appeal to file a motion in the Court, we now clarify that Rule 27(a) of the Mississippi Rules of Appellate Procedure requires it.  Here, Michele did not file a motion requesting attorneys' fees on appeal; rather she buried a one sentence request in her brief. Such requests do not comport with the Mississippi Rules of Appellate Procedure.  Rule 27(a) provides, in pertinent part,

Maxwell's specially concurring opinion, *sua sponte* recusal is not mandatory in all constructive criminal contempt cases.

(a) Content of Motions; Response.  Unless another form is elsewhere prescribed by these rules, an application for an order or other relief *shall be made* by filing a motion for such order or relief with proof of service on all other parties.  The motion shall contain or be accompanied by any matter required by a specific provision of these rules governing such a motion, shall state with particularity the grounds on which it is based, and shall set forth the order or relief sought.  If a motion is supported by briefs, affidavits, or other papers, they shall be served and filed with the motion.

M.R.A.P. 27 (emphasis added).

¶24.   Because Michele failed to make a viable request for relief under Rule 27, we decline to consider her request.  While the Court has suggested that the better practice for a party seeking attorneys' fees on appeal is to file a motion pursuant to Rule 27(a), we hold that, henceforth, such requests must comply with Rule 27(a).

### CONCLUSION

¶25.   Because Roger waived his recusal argument by failing to raise it at the trial level, we affirm the chancellor's judgment.  Because Michele failed to make a viable request for attorneys' fees on appeal, the Court declines to consider the request.

¶26.   **AFFIRMED**.

      **RANDOLPH, P.J., BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. MAXWELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J. WALLER, C.J., NOT PARTICIPATING.**

      **MAXWELL, JUSTICE, SPECIALLY CONCURRING:**

¶27.   I agree with the majority that, by not requesting that the chancellor recuse, Roger has waived this issue on appeal.  But given Roger's argument, I find it would be helpful to

10

Roger—as well as the bench and bar—to explain why, in this particular constructive-criminal-contempt case, Roger had to request the chancellor recuse to preserve this issue.

¶28.    Part of Roger's argument is that recusal could not be waived.  He suggests it was the chancellor's duty to recuse *sua sponte* given the nature of the contempt.  As Roger sees it, our caselaw mandates judges recuse in *every* case involving constructive criminal contempt. Roger's view hinges on his reading of two cases—**Cooper Tire & Rubber Co. v. McGill**, 890 So. 2d 859, 868 (Miss. 2004), and **In re Smith**, 926 So. 2d 878, 888 (Miss. 2006).  He argues that, when read together, the cases "extend" the requirement to recuse *sua sponte* in any case involving constructive criminal contempt.  But a closer look shows that neither case alters this Court's well-established standard for when a judge must recuse in a constructive-criminal-contempt case.  Instead, both cases maintain that "[i]t is necessary for that individual to be tried by another judge in cases of constructive contempt *where the trial judge has substantial personal involvement in the prosecution*." **Smith**, 926 So. 2d at 888 (emphasis added) (quoting **In re Williamson**, 838 So. 2d 226, 238 (Miss. 2002)); *see also* **Cooper Tire**, 890 So. 2d at 869.

¶29.    In other words, it is not simply the nature of the contempt that mandates recusal. Indeed, the constructive criminal nature of the contempt is just part of the inquiry. The judge must also have "substantial personal involvement in the prosecution" to trigger the due-process requirement that the matter be tried by another judge.  **Corr v. State**, 97 So. 3d 1211, 1215 (Miss. 2012) (quoting **Graves v. State**, 66 So. 3d 148, 151 (Miss. 2011)).  "Examples of 'substantial personal involvement in the prosecution warranting recusal include cases

11

where the trial judge acts as a 'one-man grand jury;' where the trial judge is 'instrumental in the initiation of the constructive-contempt proceedings;' and where the trial judge 'acts as prosecutor and judge.'" *Id.* (quoting *Graves*, 66 So. 3d at 154). *E.g.*, *Corr*, 97 So. 3d at 1215 (holding that the chancellor had substantial personal involvement because he initiated the contempt proceeding when he issued show-cause orders); *In re Williamson*, 838 So. 2d at 238 (holding that the chancellor had substantial personal involvement because he was a material witness in the contempt proceeding).

¶30. Here, Roger does not even argue the chancellor had substantial personal involvement in the prosecution of the contempt proceeding—a proceeding admittedly initiated by his wife. Nor does the record support such a finding. So the chancellor was not required to recuse *sua sponte*. As the majority explains, recusal was discretionary. And the chancellor can hardly be said to have abused his discretion by not recusing when he was never asked to do so.

**RANDOLPH, P.J., COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., JOIN THIS OPINION.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶31. Roger Dale Latham received no notice that he might be held in constructive criminal contempt, thus he had no reason to seek recusal of the trial judge. Therefore, I respectfully dissent.

¶32. The waiver rule does not and cannot apply when the defendant is without notice that he or she is at risk of being held in constructive criminal contempt, and no decision of this Court holds otherwise. Constructive criminal contempt proceedings address "actions [that] are committed beyond the presence of the court." *Purvis v. Purvis*, 657 So. 2d 794, 797

12

(Miss. 1994). As such, and as noted by this Court in *In re McDonald*, 98 So. 3d 1040, 1044 (Miss. 2012), defendants in constructive criminal contempt proceedings are "entitled to certain due-process safeguards, including the recusal of [the trial court] and notice of the specific criminal charges against them."

¶33.   The majority relies on two decisions of this Court that are plainly distinguishable. The majority first cites this Court's opinion in *Tubwell v. Grant* for the proposition that Tubwell's failure to object to the judge's ruling on his case resulted in his waiving his recusal objection. *Tubwell v. Grant*, 760 So. 2d 687 (Miss. 2000). However, *Tubwell* has nothing to do with a judge's exercise of his contempt powers without notice. The trial court dismissed the prisoner's complaint as frivolous and noted that the prisoner already had been barred by the United States District Courts from filing any additional petitions in the United States Court of Appeals for the Fifth Circuit. *Id.* On appeal, Tubwell asserted that the trial judge should have recused himself from deciding the issue on the merits. This Court held that because Tubwell had failed to object contemporaneously or to file a motion for the trial court to recuse, Tubwell had waived such an objection. *Id.* at 689. However, at no time was constructive criminal contempt an issue, nor was Tubwell found in contempt.

¶34.   The majority also cites *In re Hampton*, 919 So. 2d 949, 957 (Miss. 2006), which involved an attorney who filed a petition for a writ of prohibition and then failed to appear at the scheduled hearing. After the trial court asked the attorney why she had missed a hearing about which she repeatedly had been reminded, the attorney failed to take responsibility for her conduct and suggested that the trial court was to blame for the

13

confusion. *Id.* at 953. As a result, Hampton was held in direct criminal contempt. *Id.* at 954. This case has no application to the present case because Hampton was found guilty of *direct criminal contempt*. Acts of direct criminal contempt "may be handled by the sitting judge instantly." *Id.* at 956 (quoting *Terry v. State*, 718 So. 2d 1097, 1104 (Miss. 1998)). In both *In re McDonald*, 98 So. 3d 1040 (Miss. 2012), and *Corr v. State*, 97 So. 3d 1211 (Miss. 2012), neither defendant sought the contemporaneous recusal of the trial court at the contempt hearing. Regardless, in both cases, this Court found that, because the matter concerned constructive criminal contempt, "the chancellor was required to recuse himself[.]" *In re McDonald*, 98 So. 3d at 1045; *Corr*, 97 So. 3d at 1215.

¶35. The only issue of which Roger Dale Latham had notice was civil contempt. As stated in Michele Ann Latham's Petition for Contempt,

13

> Michele requests that Roger be adjudicated in contempt of this Court and that he shall suffer such punishment as this Court deems proper *until he has purged himself of contempt.*
>
> . . . .

14

> . . . .
>
> Moreover, Roger's actions constitute willful and contumacious contempt of this Court, and, therefore, this Court should award Michele attorney's fees and all costs of court. Wherefore, premises considered, the Petitioner, Michele Ann Latham, prays that this her Petition for Contempt be received and filed and that upon a hearing hearof this Court will grant the following relief:

(c)     require Roger *to purge himself of contempt* by abiding by the terms of this Court's January 20, 2017 Order;

(d)     require Roger *to purge himself of contempt* by abiding by all of the terms of the provisions of the Judgment of Divorce and Martial Dissolution Agreement;

(e)     require Roger *to purge himself of contempt* by paying Michele the $25,000 owed to her according to the terms of the Marital Dissolution Agreement;

(f)     require Roger *to purge himself of contempt* by paying Michele her share of recovery from the BP claim;

(g)     require Roger *to purge himself of contempt* by paying Michele his 65% of the minor children's medical, doctor, hospital, optical, counseling, dental, opthalmic, orthodontic, psychological, psychiatric, vision and prescription drug expenses which are not reimbursed by insurance.

. . . .

(i)     and for such other relief as which she may be entitled.

(Emphasis added.)

¶36.    Civil contempt actions seek only to compel the contemnor to compliance with what he or she was ordered to do. "In civil contempt cases, the contemnor can discharge the contempt by 'paying the costs and expenses and doing what he had previously refused to do.' . . . In other words, 'he carries the keys of his prison in his own pocket.'" ***Common Cause of Miss. v. Smith***, 548 So. 2d 412, 415 (Miss. 1989). This principle was reinforced in ***Purvis***, in which this Court held,

> If the primary purpose is to enforce the rights of private party litigants, or to enforce compliance with a court order, the contempt is civil. One may be jailed or fined for civil contempt[;] however, the contemnor must be relieved of the penalty when he performs the required act.

15

*Purvis*, 657 So. 2d at 796-97.

¶37. For indirect criminal contempt, we require notice of the charges, a statement of the specific conduct alleged to be contemptuous, and a hearing. *Corr*, 97 So. 3d at 1216; *Moulds v. Bradley*, 791 So. 2d 220, 225 (Miss. 2001) ("Without notice of [constructive] criminal contempt sanctions, [the accused's] due process rights were violated.");[3] *Purvis*, 657 So. 2d at 798 ("constructive contempt requires a specification of charges, notice and a hearing.")

¶38. Further, the transcript plainly shows that the judgment for constructive criminal contempt was the independent act of the trial court. Here, the chancellor's own comments at the contempt hearing reveal that his involvement was substantial. Upon finding Roger Dale Latham in criminal contempt, the chancellor explicitly stated his reasoning for doing so:

The Court: *The Lathams have been litigating before this Court for quite some time*. They were divorced in February of 2016, and they had a sizeable estate, but you see over here all people are the same.

. . .

The Court: It's very clear to this Court *that Mr. Latham has demonstrated a cavalier attitude towards the judgments of this Court, and therefore, to the Court itself*. It is without a doubt disconcerting to this Court *when someone just obviously and for no good reason disobeys the judgment of this Court which has the force of law*.

(Emphasis added.)

---

[3] In the federal system, the Fifth Circuit Court of Appeals also has held that, "[f]or notice of criminal contempt to be valid, it should indicate the criminal nature of the proceeding." *In re Rumaker*, 646 F.2d 870, 873 (5th Cir. 1980).

¶39. Upon being asked for clarification by defense counsel, the Chancellor clarified his reasoning for finding Roger in criminal contempt, as opposed to a lesser sentence:

[Defense]: If I may ask a question, Your Honor?

The Court: Yes, sir.

[Defense]: What I think I'm hearing you say is 72 hours in jail regardless? No matter what?

The Court: Regardless. No – no get out of jail free card. He goes immediately to the Rankin County jail for 72 hours. *And if he comes back here having violated this Court's judgment again, I'm not going to be so lenient with him. He's going to spend ten days in full and he's probably going to get a good bit more.*

[Defense]: Yes, sir.

The Court: I'm tired of this. There's no need in it. It has been ridiculous having to address all these issues *which were so plainly stated in the prior judgments of this Court.*

(Emphasis added.)

¶40. In matters of constructive criminal contempt, a trial judge's recusal is mandatory. As this Court held in ***Corr***, "[w]e conclude that the contempt proceedings were for constructive [] criminal contempt, and, therefore, the chancellor was required to recuse himself from the contempt proceedings and issue Rule 81 process giving [the accused] notice of the criminal charges against them." ***Corr***, 97 So. 3d at 1216; *see also **In re McDonald***, 98 So. 3d at 1045 ("[T]he chancellor was required to recuse himself and to issue [Rule 81] summonses to the [d]efendants giving them notice of the criminal contempt charges against them.").

¶41. For these reasons, I respectfully dissent.

**KING, J., JOINS THIS OPINION.**

17